# IN THE UNITED STATES DISTRICT COURT

### FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| SAFECO INSURANCE COMPANY OF AMERICA, ET AL., | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Civil Action No.  07-01086 |
| | ) | |
| S & T BANK, | ) | |
| Defendant. | ) | |

## MEMORANDUM ORDER

This matter is before the Court on Defendant's Motion to Strike The Testimony and Expert Report of Mr. William Schwartzkopf (Docket No. 103).  The main question is whether Plaintiff's expert's methodology for calculating damages is reliable enough to furnish admissible expert testimony, given Plaintiff's proffer of various witness testimony on causation.  The Court finds that it is, at this stage of the litigation.  Therefore, upon consideration of the arguments of the parties, and for the reasons described herein, it is hereby ORDERED that Defendant's Motion to Strike the Testimony and Expert Report of Mr. William Schwartzkopf (Docket No. [103]) is DENIED.  And, it is further ORDERED that the bench trial in this matter will proceed in two phases, the first to determine liability and causation and the second to determine damages; Plaintiff's expert's testimony and report will not be admitted or considered until the second phase.

## I.  FACTUAL BACKGROUND

The parties are familiar with the complex history of this matter, and, therefore, the Court will only briefly recapitulate it here.  This multi-part litigation stems from the same set of facts

concerning the parties' relationships with A&L, Inc., a construction company.  Plaintiff Safeco[1] provided surety bonds to A&L, Inc., to assist in the performance of bonded construction contracts, pursuant to a General Agreement of Indemnity for Contractors ("Indemnity Agreement"), giving Plaintiff security interests in certain assets of A&L.  (*See* Docket No. 37-2, Exh. A).  Since Plaintiff's security interests in certain A&L assets coexisted with prior security interests held by Defendant, Plaintiff and Defendant executed an "Intercreditor and Mutual Subordination Agreement" ("Intercreditor Agreement") on or about June 13, 2006. (*See* Docket No. 37-6, Exh. E).

Two of A&L's bonded construction contracts involved the Port Authority of Allegheny County ("Port Authority") and resulted in litigation between A&L and Port Authority in the Court of Common Pleas of Allegheny County (C.A. No. GD-02-006832 (Ct. Comm. Pleas Allegheny Cty. 2005))(the "PAAC Litigation") where A&L sought damages for delays and cost overruns on the construction project, allegedly caused by Port Authority.  Plaintiff claims that when it became apparent that A&L could not afford to continue the PAAC Litigation, Plaintiff and Defendant entered into another agreement (the "PAAC Litigation Agreement"), premised on their shared interests in the outcome of the litigation, whereby Plaintiff agreed to prosecute the PAAC Litigation "in exchange for a portion of the proceeds thereof being subordinated by S&T in favor of Safeco, which were otherwise prior perfected collateral of S&T."  (Docket No. 37 at ¶25).  Defendant denies the

---

[1]
    The identities of the parties and their roles have shifted and continue to shift in the various state and federal cases.  For clarity and simplicity, the Court refers to Safeco as "Plaintiff" and S&T Bank as "Defendant," their current posture before this Court.  At various times and in other actions, their roles have been reversed (S&T Bank is a plaintiff in the Indiana County Action) and they have had and continue to have co-parties (including A&L).  Nonetheless in this opinion, "Plaintiff" refers to Safeco and "Defendant" refers to S&T Bank.  Furthermore, "A&L" refers to a collection of parties associated with A&L, Inc., including other corporations (GAL, Construction, Inc., and Bojalad Holdings, Inc.) and individuals (Louis D. and Carol A. Ruscitto).

existence of any PAAC Litigation Agreement or that Plaintiff took over the PAAC Litigation.  A&L and the Port Authority settled the PAAC Litigation in June of 2007 or June of 2008 (the parties disagree as to the date).  Plaintiff claims that Defendant thereby breached the PAAC Litigation Agreement.  Plaintiff and Defendant both subsequently demanded that the Port Authority pay them the proceeds of the settlement.  Plaintiff and Defendant disagree as to who has the proper claim to the proceeds of the settlement.

Plaintiff argues that if it had been able to control the PAAC Litigation, pursuant to the PAAC Litigation Agreement, it would have secured a larger settlement or a larger damages award at the end of litigation.  To that end, Plaintiff seeks to introduce the expert opinions of William Schwartzkopf[2] regarding the amount of damages allegedly sustained.  Mr. Schwartzkopf, at the behest of Plaintiff, prepared a report calculating damages allegedly sustained by A&L in four areas of its work (the soldier pile work; the earthwork; the bridge superstructure; and general delays of 190 days), but he did not perform any analysis of the causes of those damages.  (Docket Nos. 103-3 at 6-10; 112 at 100-1).  Defendant S&T argues that this testimony and report should not be admitted because the methodology used is unreliable.

To prepare his "Analysis of Amount Claimed by A&L Against the Port Authority" (the "Report") (Docket No. 103-3) Mr. Schwartzkopf evaluated the following documents and materials provided to him by Plaintiff:

1.       The Request for Equitable Adjustment Demand for Payment dated September 2004.

---

[2]

Mr. Schwartzkopf is an engineer and attorney, and he is the co-author, with John J. McNamara, of CALCULATING CONSTRUCTION DAMAGES (Aspen Law & Business 2001).  He testifies regularly as an expert witness as to damages in construction cases.

2.      A Job Cost History Summary dated September 8, 2004.
3.      A Project Breakdown showing the bid units, bid amounts and the actual labor, equipment, materials, and subcontracts expended against those bid amounts as of July 30, 2004.
4.      The Contract.
5.      The Complaint and Jury Demand.
6.      Miscellaneous select correspondence on the project.

(Docket No. 103-3 at 4).[3]   In preparing his Report, he did not speak to any A&L personnel or examine any other documents, including Defendant's pleadings in this matter or any documentation prepared by the Port Authority which could have countered A&L's claims.  (Docket No. 112 at 71-72).  As he worked on the report, Mr. Schwartzkopf repeatedly requested more documentation from Plaintiff, but was told that none was available because A&L was now a defunct corporation.  (Docket No. 103-6 at 13).  After the Report was completed, however, more documentation came to light, a printout of the detailed transactions register showing specific transactions which made up the subtotals in the documents originally available to him. (*Id.*; Docket No. 112 at 59).  He subsequently compared the subtotals in the materials he had used to the more detailed transaction registers and found that they were largely consistent with one another.  (Docket No. 112 at 106).  Although he noted in his Report that "[n]ormally in the preparation of analysis of a claim of this type much more detailed, cost and budget information would be available as well as more detailed schedule information and information about activities on the project site," Mr. Schwartzkopf was able to complete the Report and testified repeatedly that he had enough accounting data to prepare his Report and the opinions contained therein.  (Docket Nos. 103-3 at 4; 112 at 96-98).[4]

---

[3] These materials were subsequently made of record in this matter as Plaintiff's Exhibit 1 to the January 6, 2010 hearing on this motion. (Docket No. 109-1).

[4]

In his deposition, Mr. Schwartzkopf testified that if he had more information, he could have

In his Report, Mr. Schwartzkopf analyzed the documents available to him at the time and determined which entries corresponded to costs incurred in the four areas of the construction project. (Docket No. 103-3 at 6-10). The four areas he considered were those where Plaintiff told Mr. Schwartzkopf that A&L had incurred additional costs caused by the actions of the Port Authority, and those claimed in A&L's Request for Equitable Adjustment Demand for Payment dated September 2004. (Docket No. 112 at 100-01). Mr. Schwartzkopf assumed that the Plaintiff's claims regarding causation were true and would be proven at trial through the testimony of fact witnesses. (*Id.*). Although his Report contains repeated references to damages "caused" by the Port Authority or "resulting from" the Port Authority's actions, Mr. Schwartzkopf made clear in his testimony that these were merely assumptions based on the Plaintiff's representations to him and A&L's claims in the PAAC litigation. (*Id.*).

Mr. Schwartzkopf first analyzed which categories of the overall project corresponded to those which he would assume were caused by the Port Authority. (Docket No. 103-3 at 2-5). Mr. Schwartzkopf calculated that the total costs incurred by A&L were $43,055,543.00. (*Id.* at 5). To determine any cost overruns, by comparing cost to budget, Mr. Schwartzkopf took the unit prices provided in the documents and divided by 1.15 to obtain a budget. (*Id.*). He chose a factor of 1.15, because in his experience, 15% is the minimum charge that a contractor would accept for a construction project like A&L's, and he wished to keep his estimate conservative. (*Id.*) Mr. Schwartzkopf used an extended estimated cost per unit, and compared cost to budget by specific category of work carried out by A&L. (*Id.*) He listed the amount budgeted, the cost overrun, the

---

done a "more detailed analysis" and that he might have then been able to address questions of causation, which he did not do, but that his Report was based on the materials available to him. (Docket No. 103-6 at 13-14).

15% markup for the overrun, and then the difference between the amount budgeted for the specific work done and the sum of the markup and overrun.  (*Id.* at 7-10, Exhibits 3-7).  Finally, he calculated "Total Direct Damages" of $11,503,658.  (*Id.* at 10).

## II.  PROCEDURAL POSTURE

Given the complexity and length of the litigation related to this case, the following describes only that procedural history relevant to Defendant's Motion to Strike and the current procedural posture of the case.  (Docket No. 103).

Parallel to this action, filed by Plaintiffs on August 6, 2007 (Docket No. 1), Defendant brought two actions for Declaratory Judgment in the Court of Common Pleas of Indiana County, Pennsylvania (collectively the "Indiana County Action").  *S&T Bank v. Safeco Insurance Co. et al*, Nos. 11728-CD-2007, 11811-CD-2007 (Indiana Cty. Ct. Comm. Pleas).  Plaintiff sought to remove the Indiana County Action to this Court, but it was remanded on March 17, 2008.  *S&T Bank v. Safeco Insurance Co. et al*, Civ A. Nos. 07-1324, 07-1341 (W.D.Pa. Mar 17, 2008).

Defendant first informed the Court of its intention to pose a *Daubert* challenge to Plaintiff's expert witness during a Status Conference on September 16, 2009.  (Docket No. 101).  On October 16, 2009, Defendant filed the instant Motion to Strike.  (Docket No. 103).

On October 20, 2009, the Court issued an Order staying all dispositive motions practice pending resolution of Defendant's Motion for Partial Summary Judgment in the Indiana County Action.  (Docket No. 105).  However, in the interests of judicial efficiency, the Court ordered that the deadlines for the instant *Daubert* challenge remain in place. (*Id.*)

On November 16, 2009, Plaintiff filed its Response to the Motion to Strike.  (Docket No. 106).  Defendant filed a Reply Brief on November 30, 2009.  (Docket No. 107).  And, Plaintiff filed

a Sur-Reply Brief on December 14, 2009. (Docket No. 108). On Wednesday, January 6, 2010, the Court convened a hearing and heard testimony from Mr. Schwartzkopf and oral argument. (Docket No. 112).

On January 11, 2010, at the request of the parties, the Court referred the case to Magistrate Judge Cathy Bissoon for a renewed mediation conference, which is now scheduled for March 18, 2010. (Docket No. 110). On January 29, 2010, the Court of Common Pleas of Indiana County issued its Opinion and Order of Court Denying Defendant's Motion for Partial Summary Judgment. *S&T Bank v. Safeco Insurance Co. et al*, No. 11811 CD 2007 (Indiana Cty. Ct. Comm. Pleas Jan. 29, 2010). This Court subsequently lifted the stay on dispositive motions in this matter, which are now due by May 19, 2010. (Docket No. 111).

As the instant motion has been fully briefed and argued, it is now ripe for disposition.

### III.  STANDARD OF REVIEW

#### A.    *Pennsylvania Standard for Proving Damages*

Because this matter is before the Court on diversity jurisdiction and involves state law claims, Pennsylvania law applies to matters of substantive law, including damages calculations. *Erie Railroad v. Tompkins*, 304 U.S. 64 (1938); *Yohannon v. Keene Corp.*, 924 F.2d 1255, 1265 (3d. Cir. 1991) ("Rules for ascertaining the measure of damages are 'matters of substance' for *Erie* purposes." (internal citation omitted)). Furthermore, if Plaintiff had been given control of the PAAC litigation, it would have been required to prove damages therein under Pennsylvania law.

In Pennsylvania, a plaintiff must provide a factfinder evidence from which damages may be calculated with "reasonable certainty." *ATACS Corp. v. Trans World Communications, Inc.*, 155 F.3d 659, 668 (3d Cir.1998). "At a minimum, reasonable certainty embraces a rough calculation that

is not 'too speculative, vague or contingent' upon some unknown factor." *Id.* at 669 (quoting *Spang & Co. v. United States Steel Corp.*, 519 Pa. 14, 545 A.2d 861, 866 (1988)).  "While mathematical certainty is not required, the plaintiff must introduce sufficient facts upon which the jury can determine the amount of damages without conjecture." *Delahanty v. First Pennsylvania Bank, N.A.*, 318 Pa.Super. 90, 464 A.2d 1243, 1257 (Pa. Super. Ct.1983); *see also Ware v. Rodale Press, Inc.*, 322 F.3d 218, 226 (3d Cir. 2003); *Scully v. U.S. WATS, Inc.*, 238 F.3d 497, 515 (3d Cir.2001).

The Court remains mindful of this background requirement of proof to a reasonable degree of certainty as it considers the admissibility of Mr. Schwartzkopf's testimony.  This standard of proof defines the question that Mr. Schwartzkopf's testimony must address.

**B.    *Federal Standard for Admission of Expert Testimony***

Federal Rule of Evidence 702, which memorializes the Supreme Court's landmark case *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), provides the basic framework for the admissibility of expert testimony:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training or education, may testify thereto in the form of an opinion or otherwise if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles or methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

FED. R. EVID. 702.[5]  The Court of Appeals for the Third Circuit analyzes these requirements focusing on the "trilogy of restrictions on expert testimony: qualification, reliability, and fit."  *Calhoun v.*

---

[5]

FED. R. EVID. 702 was amended in 2000 in response to *Daubert*, but pre-2000 precedent regarding the *Daubert* analysis also applies to the analysis under Rule 702.  *See, e.g., Pineda v. Ford Motor Co.*, 520 F.3d 237, 244 (3d Cir. 2008).

*Yamaha Motor Corp. U.S.A.*, 350 F.3d 316, 321 (3d Cir. 2003).[6]

The Court of Appeals for the Third Circuit has characterized the reliability requirement as follows: "the expert's opinion must be based on the 'methods and procedures of science' rather than on subjective belief or unsupported speculation'; the expert must have 'good grounds' for his or her belief." *In re Paoli R.R. Yard PCB Litig.*, 35 F3d 717, 741 (3d. Cir 1994)(quoting *Daubert*, 509 U.S. at 590). The reliability of an expert's methodology is analyzed based on the following factors drawn from *Daubert*:

> (1) whether a method consists of a testable hypothesis; (2) whether the method has been subject to peer review; (3) the known or potential rate of error; (4) the existence and maintenance of standards controlling the technique's operation; (5) whether the method is generally accepted; (6) the relationship of the technique to methods which have been established to be reliable; (7) the qualifications of the expert witness testifying based on the methodology; and (8) the non-judicial uses to which the method has been put.

*Calhoun*, 350 F. 3d at 321 (*citing Paoli*, 35 F.3d at 742). However, not every factor identified in *Daubert* is necessarily relevant in assessing reliability, "depending on the nature of the issue, the expert's particular expertise, and the subject of his testimony," and, indeed, an opinion need not be based in "science" or be "scientific" (though that was the case in *Daubert*) for an expert to opine, so long as the expert's opinion has "'a reliable basis in the knowledge and experience of his discipline.'" *Kumho Tire Co. Ltd. v. Carmichael*, 526 U.S. 137, 148-150 (1999)(quoting *Daubert*, 509 U.S. at 592).

The Court must bear in mind, however, that expert testimony can be powerful and misleading

---

[6]

Defendant does not contest Mr. Schwartzkopf's qualifications. (Docket No. 104, at 8 n. 2)

because of the difficulty in evaluating it,[7] and the Court of Appeals for the Third Circuit has cautioned that "district courts should tread carefully when evaluating proffered expert testimony, paying special attention to the relevance prong of *Daubert.*" *Id.* at 219 n. 6.  The "fit" requirement of an expert's testimony requires that the testimony "be relevant for the purposes of the case and must assist the trier of fact."  *Calhoun*, 350 F.3d at 321(citing *Schneider v. Fried*, 320 F.3d 396, 405 (3d Cir. 2003)).  "Rule 702's helpfulness standard [i.e. the fit requirement] requires a valid scientific connection to the pertinent inquiry as a precondition to admissibility." *Daubert,* 509 U.S. at 591-92. This inquiry addresses the question of relevance because an expert opinion that is unrelated to a disputed issue is not relevant and cannot assist the trier of fact as required by Rule 702.  *Id.*  For purposes of this analysis, the Court must be mindful of the ultimate question which Mr. Schwartzkopf's testimony must "fit," i.e. does it provide evidence of damages relevant to the Pennsylvania standard described above?  However, the Court should not make this requirement insurmountable since the standard for analyzing the fit of an expert's analysis to the case is "not that high." *United States v. Ford*, 481 F.3d 215, 219-20 (3d Cir. 2007) (quoting *Paoli*, 35 F.3d at 745).

## IV.  DISCUSSION

Before embarking on an analysis of whether Mr. Schwartzkopf's methodology and proposed testimony meet the "trilogy of restrictions" for admissibility, the Court will consider what, exactly, his testimony must address, specifically whether he must testify as to the cause of the damages he

---

[7]

The danger of misleading the trier of fact is, of course, lessened in a bench trial. Further, there will be an opportunity to cross examine this witness at trial to further test his opinions and their underpinnings, and Defendant may be able to develop additional reasons to renew its motion. Moreover, as this is a bench trial, the Court will consider proposed findings of fact and conclusions of law before rendering its opinion. Some of those will undoubtedly address the proposed expert opinions in this case.

calculates.  Once that question is answered, the Court will consider the questions of qualifications, reliability, and fit.

### A.    *Causation*

It is undisputed that, in addition to showing liability and damages, a plaintiff must show that the defendant caused the damages. *S. J. Groves & Sons Co. v. Warner Co.*,  576 F.2d 524, 527 (3d Cir. 1978).   And, Plaintiff and Mr. Schwartzkopf admit repeatedly that Mr. Schwartzkopf has provided no opinion or testimony concerning causation.  (*See, e.g.* Docket Nos. 106 at 9; 112 at 100-01).  Defendant contends that when an expert testifies as to damages, he must also testify as to causation in order for his testimony to be admissible.  (Docket No. 104 at 10).   However, as discussed below, the relevant precedent indicates that an expert need not testify as to causation in order to testify as to damages.

Defendant points to a series of cases (*Lichter v. Mellon-Stuart*, 305 F.2d 216 (3d Cir. 1962); *Groves v. Warner*, 576 F.2d 524 (3d Cir.1978); *Jet-Blast Hydro Demolition Canada, Inc. v. Joseph Paolino & Sons, Inc.*, 1993 U.S. Dist. LEXIS 1004 (E.D. Pa. 1993); *Net Constr., Inc. v. C&C Rehab. & Constr. Co., Inc.*, 256 F.Supp.2d 350 (E.D. Pa. 2003)) and argues that they all stand for the proposition that "the burden is on the Plaintiff to establish proximate cause between breach and damages and if the loss cannot be isolated from those attributable to other factors, no damages may be awarded." (Docket No. 104 at 10).  Indeed, each of these cases does stand for that proposition; in each instance, the court refused to award the total amount claimed in damages by the plaintiff because the plaintiff had not established that the defendant's actions caused all of the damages. However, they do not address the question of whether a particular expert must provide the proof of causation.

In fact, in both Third Circuit cases cited by Defendant, the Court of Appeals upheld a district court's use of a reasonable estimate to determine causation when it was impossible to allocate damages exactly. *Lichter*, 305 F.2d at 221 (upholding both the district court's rejection of one claim because there was no basis for determining causation, and its award of a fraction of claimed damages on another claim based on a reasonable estimate of causation); *Groves*, 576 F.2d at 527-28.  In other words, it was *not* improper for the district court to hear the case and even to award damages when the allocation of causation was only reasonably ascertainable.

Defendant makes much of *City of Beaumont v. Excavators & Constructors, Inc.*, 870 S.W.2d 123 (C.A.Tex. 1993), a case where the state Court of Appeals of Texas found that the Texas 58th District Court erred in entering judgment for a plaintiff contractor and against a telephone company for damages allegedly sustained due to the telephone company's hindrance and delay in the plaintiff's performance of its construction contract. (Docket No. 104 at 13-14).  In that case, Mr. Schwartzkopf also served as the plaintiff's expert witness on damages, and he testified that the total damages suffered by the plaintiff were $230,721, the exact sum eventually awarded to the plaintiff by the jury. *City of Beaumont*, 870 S.W.2d  at 131-35.  He did not testify as to causation and, in fact, admitted that he had not performed a causation analysis and that the damages were attributable to the actions of a number of parties, including the plaintiff and other defendants who had settled their disputes. *Id.*  The Court of Appeals of Texas found this to be reversible error since the evidence in the record was that the full amount awarded was not attributable only to the defendant but to a number of parties.  *Id.*  Defendant would have this Court find that this means that the expert must perform a causation analysis and must testify as to causation.  However, there is nothing in *City of Beaumont* to indicate that *Mr. Schwartzkopf* should have provided that analysis, only that the Plaintiff needed

to do so and that when the causation evidence before the court contradicted the eventual award of damages, said award was improper. *Id.*

Plaintiff also argues that it should be able to prove causation through other means, including fact witnesses. (Docket No. 104 at 6-7). Plaintiff argues that testifying as to "responsibility for events at issue in the field that caused construction disruptions, delays and damages are not beyond the scope of knowledge of the construction personnel of A&L involved with the PAAC project" and that "documentation and other demonstrative evidence can be used to prove causation." (*Id.*). In support of this position, Plaintiff directs the Court to *A.G. Cullen Construction, Inc. v. State System of Higher Education*, 898 A.2d 1145 (Pa. Commwlth. 2006), where the court relied on the testimony of a credible lay witness, the plaintiff's vice president, to show causation.

Plaintiff is correct that expert testimony is not the only way for a plaintiff to carry its burden of proving causation. That Mr. Schwartzkopf's testimony and report do not address all of the elements of Plaintiff's case does not make them irrelevant or inadmissible. However, the inquiry does not end there. If Mr. Schwartzkopf's report and testimony are based on a methodology that *requires* an analysis of causation, and if he admits that he has performed no such analysis, then clearly that methodology cannot be said to be reliable or to fit the available evidence.

**B.      *Qualifications***

Defendant does not contest Mr. Schwartzkopf's qualifications as he is "an attorney, an engineer, and a consultant with decades of experience," and he literally wrote the book (WILLIAM SCHWARTZKOPF & JOHN J. MCNAMARA, CALCULATING CONSTRUCTION DAMAGES (Aspen Law & Business 2001) ("SCHWARTZKOPF & MCNAMARA")) on the subject, which both parties reference as an authoritative treatise on the question. (Docket No. 104, at 8 n. 2). As discussed below, much of

the dispute between the parties concerns how and whether Mr. Schwartzkopf implemented the practices recommended in his book.

**C.     *Reliability***

The reliability analysis considers whether the methodology employed by the expert has "'a reliable basis in the knowledge and experience of his discipline.'" *Kumho Tire*, 526 U.S. at 148-50 (quoting *Daubert*, 509 U.S. at 592). In his book, Calculating Construction Damages, Mr. Schwartzkopf outlines the basic methods of damages calculations. Both parties refer to this discussion throughout their briefs.

*1.     Actual Cost Method*

The Actual Cost Method of calculating damages, also called the Discrete Cost Method, is the method preferred by most courts. "In this method, the actual cost records of the contractor are used to 'itemize and total the cost of each piece of equipment or material and each man hour necessitated by the [breach].'" Schwartzkopf & McNamara, at 11 (quoting *State Hwy. Comm'n of Wyo. v. Brasel & Sons Constr. Co., Inc.*, 688 P.2d 871, 877 (Wyo. 1984)). This method involves a "line-by-line analysis of the cost records," with every item with a significant cost overrun or underrun identified. *Id.* In his book, Mr. Schwartzkopf states that "[t]o the extent possible, the actual cost method should be used. *Id.* Even if actual cost analysis is not applicable to all elements of the claim, the more elements to which it is applied, the better the overall analysis." *Id.* at 12. In short, this method looks at the actual expenditures by the contractor that were attributable to the Defendant and determines damages from them. This is, of course, only possible when records of such expenditures exist.

*2.     Estimated Cost Method*

Under the Estimated Cost Method, the plaintiff estimates the damages, based on his experience making such estimates of costs in the course of business.  In short, "the claimant furnishes a wide array of data, including estimates by contractor personnel, expert witnesses, cost data, and accounting records, in an attempt to provide reasonable value for the damage." SCHWARTZKOPF & MCNAMARA, at 14.  Neither party contends that Mr. Schwartzkopf used the Estimated Cost Method.

> ### 3.   Total Cost Method

"The Total Cost Method calculates damages as the difference between total actual costs incurred (plus overhead and profit) and the bid amount." *Id.* at 14.  In other words, it finds that the damages equal the amount by which the final costs (plus overhead and profit) exceeded the bid estimate.  It is popular with contractors because it is simple and accounts for the largest damages: all costs in excess of the estimate.  Courts do not favor this method, however, because it assumes that *all* cost overruns were due to the actions of the Defendant, when, indeed, there can be other causes.

"The issues subject to attack are: (1) the validity and accuracy of the original estimate; (2) errors and deviations from the work plan by the contractor that result in added costs; and (3) events increasing the cost (such as weather) that are not the fault of the owner.  If the total cost method is used, each of these points must be addressed by the claimant in any claim presentation as part of its burden of proof." *Id.*  Given the broad assumptions about causation made by a party using the Total Cost Method, and the burden of assuring that the method is appropriate when used, the Total Cost Method is considered a method of last resort where no better method may be feasible.  *Id.*  at 15.

State and federal courts consider the fairness and reasonableness of using the Total Cost Method under the circumstances of a given case.  *Id.* at 19.  Mr. Schwartzkopf's book cites, and

Plaintiff relies upon, *E.C. Ernst, Inc. v. Koppers Co., Inc.*, 626 F. 2d 324, 327 (3d Cir. 1980), in which the Court of Appeals determined that in a case where a contractor is sued by a sub-contractor for delay damages and extra costs, a Pennsylvania court would likely permit the use of the Total Cost Method, because in Pennsylvania damages need be proven only to a reasonable certainty, and the Total Cost Method satisfies this requirement. SCHWARTZKOPF & MCNAMARA, at 17.

4.     *Modified Total Cost Method*

The Modified Total Cost Method was created in response to complaints surrounding the adequacy of the Total Cost Method. *Id.* at 21. This method seeks to measure increased costs *directly* suffered from particular acts by a defendant. *Id.* To this end, a plaintiff reduces its claim in the amount of bid errors, costs arising from contractor actions, and costs arising from actions of parties other than the owner. *Id.* Any damages that may be calculated without using the Total Cost Method, should be determined independently. *Id.* Where possible, Total Cost calculations should be made on separate items or areas of work, allowing for greater accuracy in calculation, as opposed to framing all costs as a lump sum. *Id.* This method is treated similarly to the Total Cost Method in that a party moving for its use must be unable to employ a better method under the circumstances of the case. *Id.* at 21-23.

5.     *Mr. Schwartzkopf's Method in the Instant Case*

Mr. Schwartzkopf's report states that he "calculated the damages on a discrete basis using the cost report and billing information," and not on the Total Cost basis that he and Plaintiff contend A&L originally used. (Docket Nos. 103-3 at 4; 112 at 51). In his deposition testimony, Mr. Schwartzkopf explained his analysis of A&L's budget and overruns exactly as explained in his written Report, and described the method he used as "Discrete." (Docket No. 103-6 at 70-74). Mr.

Schwartzkopf explained that when he referred to using a Discrete Method of calculating damages, he was in fact referencing his use of the Actual Cost Method. *Id.* at 49. Mr. Schwartzkopf testified that he compared specific portions of the actual costs listed in the documents provided to him with his estimation of A&L's likely budget. *Id.* at 57. Mr. Schwartzkopf asserted in his testimony that in calculating damages an expert uses the greatest degree of detail that the records permit, and with the greatest certainty possible, ties the damages to the claimant's cost accounting records. *Id.* at 52. His testimony before this Court was, once again, in keeping with this description and characterization of his methodology. (Docket No. 112).

Defendant contends that Mr. Schwartzkopf's Report is not the result of an Actual or Discrete Cost Method analysis but rather a Total Cost Method analysis. (Docket No. 104 at 17, 21). According to Defendant, Mr. Schwartzkopf has done nothing more than apply the Total Cost Method (subtracting bid estimate from the final cost) to four individual parts of the total project, rather than treating the entire project as a unitary whole. (Docket No. 107 at 6). Defendant contends that this is not sufficient, particularly absent any causation analysis showing that those individual parts of the total project were affected by the actions of Port Authority, to convert a Total Cost Method analysis into an Actual Cost Method analysis. (Docket No. 112 at 44). In response, Plaintiff contends that even if his analysis is considered a Total Cost Method, such method is not inadmissible in federal or Pennsylvania courts. (Docket No. 106 at 11).

The parties would have this Court consider how fine-grained an expert's analysis of damages must be in order to be considered the Actual Cost Method. In the instant case, Mr. Schwartzkopf did not consider only the total bid amounts and total costs; but, neither did he undertake a line-by-line analysis of the day-to-day expense reports. He worked from a set of subtotals. However, the

17

Court's role is not to apply the labels "Actual Cost Method" or "Total Cost Method," but rather to determine whether the method used was reliable, that is whether it has "'a reliable basis in the knowledge and experience of [the expert's] discipline.'" *Kumho Tire*, 526 U.S. at 148-50 (quoting *Daubert*, 509 U.S. at 592).

In this Court's estimation, Mr. Schwartzkopf's method of analysis regarding the damages sustained by A&L was not, strictly speaking, the Total Cost Method.  Mr. Schwartzkopf conducted an analysis of four discrete areas of construction activity that were allegedly subject to disruption and delay.  He used actual accounting records from A&L to determine the costs incurred by A&L during the construction project.  However, Mr. Schwartzkopf's method was not the Actual Cost Method, either.  The cost numbers he generated involved a significant amount of estimation, and were not the result of a line-by-line assessment of recorded construction costs by A&L.  His determination of cost overruns was based not upon A&L's records, but upon his experience in the area of construction contracting.[8]  Mr. Schwartzkopf never reviewed any budgets or estimations made on behalf of A&L regarding the work it did for Port Authority.  Mr. Schwartzkopf's analysis appears to be, in this Court's estimation, a form of the Modified Total Cost Method.   However, whether it is the Total Cost Method or the Modified Total Cost Method, the Court's analysis of its admissibility would be the same.

Despite the Defendant's contention that Modified Total Cost and Total Cost methods are

---

[8]

Per FED. R. EVID. 702, an expert witness may testify based upon his experience ("If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto.").  *See also Calhoun*, 350 F.3d at 321-24 (3d Cir. 2003) (allowing experts to testify as to general matters within their areas of expertise, but not as to specific matters beyond their experience).

generally treated very unfavorably, there is ample Pennsylvania and Third Circuit case law that contradicts the idea that these methods are never admissible. While recognizing the potential room for error and abuse in both methods, courts in the relevant jurisdictions have allowed the use of these methods where the circumstances of the case have made it reasonable to do so. In *E.C. Ernst, Inc. v. Koppers Co., Inc.*, 626 F. 2d at 327-28, the Court of Appeals for the Third Circuit determined that Pennsylvania courts would treat the Total Cost Method of calculating damages fairly rather than forbidding its use. The Court was mindful that in Pennsylvania, damages need only be proven with a reasonable degree of certainty, and not an absolute mathematical certainty. *Id.* (citing *Exton Drive-In, Inc. v. Home Indemnity Co.*, 261 A. 2d 319, 324 (1970)). Probabilities and inferences are acceptable bases for the determination of damages by an expert using the Total Cost Method. *Id.* Where an issue arises as to the reasonableness of a calculation made using the Modified Total Cost or Total Cost Methods, this is to be treated as a question of fact for presentation at trial. *Id.* This is not to say that the evidence underpinning the determination need not be reasonably accurate. *Id.* The calculation must be logically connected to the facts, and not based upon artificial estimations. *Id.*

Reiterating this general holding, the Commonwealth Court of Pennsylvania in *Glasgow, Inc. v. Comm. of Pennsylvania Dep't. of Transp.*, 529 A. 2d 576, 579 (Pa. Cmwlth. Ct. 1987), found that the Total Cost Method was acceptable, though it may be subject to speculation. For this reason, Pennsylvania allows the use of the method where there is no other reasonable means of making a reasonably certain calculation, and the plaintiff has presented reasonably accurate evidence to support the damages claim. *Id.*; *see also Larry Armbruster and Sons, Inc. v. State Public Safety Building Authority*, 505 A.2d 395, 397 (Pa. Cmwlth. Ct. 1984). The evidence may be of both a physical and testamentary nature. *Id.*

In this case, Mr. Schwartzkopf bases his calculations upon actual cost data obtained from A&L. Unfortunately, the documentation available to him to make his damages calculations was limited because A&L is a defunct entity. Further, when he was able to review additional documentation from A&L after making his initial written calculations, he found that his work was still accurate. His knowledge and expertise, which are uncontested, allowed him to make a determination of a reasonable markup rate for A&L services. To the extent the Defendant believes an abuse has occurred or that Mr. Schwartzkopf's calculations are based on inaccurate evidence or otherwise in error, such concerns can be addressed through cross-examination at trial. *See United States v. Mitchell*, 365 F.3d 215, 244 (3d Cir. 2004) (quoting Ruiz-Troche v. Pepsi Cola Bottling Co., 161 F.3d 77, 85 (1st Cir. 1998)(citations omitted) ("As long as an expert's scientific testimony rests upon 'good grounds, based on what is known,' it should be tested by the adversary process – competing expert testimony and active cross-examination – rather than excluded from jurors' scrutiny for fear that they will not grasp its complexities or satisfactorily weigh its inadequacies.")).

The method employed by Mr. Schwartzkopf meets the standard for reliability, because courts in Pennsylvania and the Third Circuit have found that, under certain circumstances, Total Cost Method and Modified Total Cost Method can provide reasonably certain calculations of damages, and because this Court finds that under these circumstances, his method can, too.

**D.    *Fit***

In this matter, there is little doubt that Mr. Schwartzkopf's report and testimony are "relevant for the purposes of the case and [will] assist the trier of fact" (*Calhoun*, 350 F.3d at 321), especially since the standard for analyzing the fit of an expert's analysis to the case is "not that high." *Ford*, 481 F.3d at 219-20 (quoting *Paoli*, 35 F.3d at 745). Considering the Pennsylvania standard that damages

be proven to a reasonable degree of certainty, it is clear to the Court that Mr. Schwartzkopf's analysis

is relevant to that inquiry.  *ATACS v. Trans World*, 155 F.3d at 668.  Further, since this matter will

proceed to a bench trial, the Court need not consider whether Mr. Schwartzkopf's testimony and

Report would prejudice a jury.  Consequently, the Court finds that Mr. Schwartzkopf's testimony and

Report would assist the trier of fact in determining the question of damages,[9] though they will not

be considered for purposes of determining liability or causation.

## V.  CONCLUSION

For the foregoing reasons, Defendant's Motion to Strike (Docket No. 103) is DENIED,

without prejudice.

However, to avoid any improper consideration of Mr. Schwartzkopf's testimony, the bench

trial will proceed in two phases, pursuant to FED. R. CIV. P. 42(b), which provides in part that "to

avoid prejudice, . . . the court may order separate trial of one or more separate issues." FED. R. CIV.

P. 42(b).  No evidence on damages, including Mr. Schwartzkopf's testimony, will be heard until the

phase establishing Defendant's liability and causation, if any, is concluded.


*s/ Nora Barry Fischer*
Nora Barry Fischer
United States District Judge


cc/ecf:  All counsel of record.
DATE: March 3, 2010

---

[9]    Since Mr. Schwartzkopf's testimony and Report do not address the questions of liability and causation, they will not be admitted or considered by the Court until those elements of Plaintiff's case have been established.